UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| QUALITY COMMUNICATIONS, INC. | ) | CASE NO.: 02-34929 |
| | ) | |
| DEBTOR(s) | ) | |
| | ) | |
| RANDALL SCHERER | ) | AP NO.: 04-3053 |
| | ) | |
| PLAINTIFF(s) | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| QUALITY COMMUNICATIONS, INC., et al. | ) | |
| | ) | |
| DEFENDANT(s) | ) | |

**MEMORANDUM-OPINION**

This matter is before the Court on the Motion for Summary Judgment of Defendant James Strozdas ("Strozdas"), the Motion for Summary Judgment of Plaintiff Randall Scherer, Trustee ("Trustee") for the Estate of Quality Communications, Inc. ("QCI") and the Motion for Summary Judgment of Defendant J.P. Morgan Chase Bank, N.A., as successor by merger to Bank One, N.A. and Intervening Defendants, Bank One, N.A., existing as successor J.P. Morgan Chase Bank, N.A., and Chase Equipment Leasing, Inc., as successor by merger to Banc One Leasing Corporation (herein referred to collectively as "Bank One" or to the specific entity where necessary). The Court considered the legal memoranda in support of each of the motions, the responsive memoranda filed by each of the parties to the respective motions, the reply memoranda and the arguments of counsel at the hearing held May 1, 2006. For the following reasons, the Court **GRANTS** the Motion of

Bank One and the Motion of Strozdas and **DENIES** the Motion of the Trustee. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

## I. STATEMENT OF UNDISPUTED MATERIAL FACTS

QCI was in the business of helping large companies save money on their telecommunication costs by uncovering billing errors. QCI would review a client's bills and the client's contracts with its telecommunication vendors, inventory the client's telecommunications equipment and review the underlying tariffs to determine whether the client was being over-charged by its vendors.

QCI sometimes worked on a contingency basis. Under the contingency fee arrangement, QCI would only be entitled to compensation if the client agreed to the change and the telecommunications provider implemented the change in its billings to the client. The contingency contract also required the telecommunications provider to issue a credit to the client for past over billing in order for QCI to receive a fee.

On or about December 5, 2000, Banc One Services Corporation ("BOSC"), a Bank One entity, and QCI entered into a Master Agreement for Information Technology Professional Services ("Master Service Agreement"). A portion of that Agreement provided that QCI could earn a one-time contingency fee of 15% of the total "Savings Result" to BOSC if a project plan was mutually agreed on by the parties and the Savings Result was accepted and implemented by BOSC's telecommunications provider, AT&T. "Savings Results" is defined as "the sum of one-time credits and reduced Annual Telecom Expenses that result from Implemented Savings". "Implemented Savings" is defined as "QCI Savings Recommendations [that] have been submitted and accepted by the appropriate vendors and the resulting vendor change has been accepted by Banc One."

QCI recommended savings to BOSC that could have resulted in a $1,536,817.38 contingency fee. The recommended savings were accepted by BOSC, but AT&T flatly rejected the recommended savings. The record is devoid of evidence that AT&T ever accepted the recommended savings. Thus, QCI was not entitled to the fee.

QCI attempted to negotiate with BOSC regarding the disputed contingency fee. BOSC, however, relied on the terms of the Master Service Agreement that it was not obligated on the fee because AT&T had not accepted or implemented the savings recommendations.

On April 18, 2001, Bank One and QCI entered into a loan agreement whereby Bank One extended QCI a $1 million line of credit. Promissory Notes on the loan were due December 31, 2001 and extended to September 30, 2002. QCI granted Bank One a security interest in QCI's inventory, chattel paper, accounts, equipment and general intangibles. Strozdas, the President of QCI and one of its three directors, personally guaranteed payment of the loan in the amount of $250,000. QCI also entered into a lease transaction with Bank One Leasing Corporation ("BOLC") whereby it leased computers and office equipment pursuant to a lease agreement.

QCI subsequently defaulted on the line of credit and the lease and began to experience severe financial difficulties. In the meantime, Strozdas corresponded with BOSC trying to get it to pay the contingency fees based upon the savings recommended by QCI. BOSC, of course, responded to QCI that the fee was not due and payable because AT&T had not accepted the recommendations.

On July 11, 2002, Jerome Strozdas, Strozdas' brother who is also an attorney, at QCI's direction, wrote to BOSC and included a formal notice of dispute under the Master Service Agreement and outlined QCI's intent to pursue all avenues of relief against BOSC. Prior to issuance

of this demand letter, Jerome Strozdas had sent an opinion letter to QCI regarding the weakness of QCI's claims against BOSC under the Master Service Agreement. In that opinion letter, he pointed out that the Master Service Agreement required AT&T to accept QCI's recommendations before the contingency fee was actually due. In his opinion, it appeared that AT&T had not accepted the recommendations, which under a strict reading of the contract meant that Bank One did not owe the fee.

In addition to Jerome Strozdas, QCI had its independent legal counsel at Greenebaum, Doll & McDonald, look into possible litigation against Bank One for its failure to pay the contingency fee. QCI also hired an independent financial consultant, Jeff Horsey to assist in resolving the dispute with Bank One.

On August 5, 2002, Strozdas sent a memo to the Board of Directors of QCI informing them that the company was insolvent and that deferred compensation to employees was owed in the amount of $997,000. Strozdas recommended various options to the Board including filing for bankruptcy protection.

Strozdas also proposed a settlement with Bank One as an alternative to bankruptcy. Under this proposal, Bank One and BOSC would release any potential claim against QCI's debt, including the $1 million line of credit and the approximately $300,000 owed on the lease and any guarantee obligations. In return, QCI would release any claim it had under the Master Service Agreement. It was Strozdas' belief that a settlement with Bank One would free QCI's assets for distribution to its other creditors.

After Strozdas' memorandum to the Board of Directors on August 5, 2002, on August 12, 2002, a special meeting of the Board of Directors of QCI was held. At that meeting, the Board of

Directors discussed a possible resolution to the dispute with Bank One. QCI's counsel, Michael Hawthorne and Jerome Strozdas, recommend the proposed settlement with Bank One. The Board of Directors voted unanimously in favor of the settlement proposal. In addition to Strozdas, two independent directors voted in favor of the settlement proposal.

On or about August 22, 2002, a Release and Settlement Agreement was executed by QCI, Bank One, BOSC and BOLC. QCI and Strozdas agreed to release Bank One from any and all claims under the Master Service Agreement and the QCI line of credit, lease and guarantee obligations. Bank One agreed to release its secured claims against QCI and Strozdas from all claims arising out of the Master Service Agreement and the line of credit. At that time, QCI owed Bank One $1 million on the line of credit and $451,784.99 on the lease.

On August 22, 2002, the QCI Board of Directors issued a resolution that stated QCI could no longer continue in business. William Houston was hired to wind up the company's affairs and liquidate any assets. Houston was unable to complete his task as an Involuntary Petition was filed against QCI by several of its creditors on November 13, 2002. At the time that QCI was placed into bankruptcy, QCI employees were owed back wages of approximately $900,000.

On or about March 12, 2004, the Trustee instituted this adversary proceeding on behalf of QCI against Bank One and Strozdas.

In Count I of the Trustee's Complaint, Trustee asserts that the release by QCI of Bank One was a fraudulent transfer pursuant to 11 U.S.C. §548. The Trustee also asserts that by the release, Strozdas and Bank One intended to hinder, delay and/or defraud the employees and creditors of QCI from collecting on their claims against QCI.

In Count II of the Complaint, the Trustee pleads that the release of Bank One was a preferential transfer pursuant to 11 U.S.C. §547 because it allowed Bank One to receive more than it would have if the case had been filed under Chapter 7 of the Bankruptcy Code.

The Trustee also pleads in the alternative that the release of Bank One was a preferential transfer pursuant to 11 U.S.C. §547 because the employees of QCI were first in priority under Kentucky Wage Lien law.

In Count III of the Complaint, the Trustee asserts that Strozdas breached his fiduciary duty to QCI by negotiating the release which was solely in his best interest and that he usurped and/or converted a corporate asset and opportunity.

On or about May 21, 2004, this Court entered an Order granting Bank One, Kentucky, N.A. and Banc One Leasing Corporation leave to intervene in the adversary proceeding and to assert a counterclaim against the Trustee seeking recovery for QCI's breach of the Master Lease Agreement and the Security Agreement. The intervening complaint also asserted a crossclaim against Strozdas for breach of his obligations to Bank One and Banc One Leasing Corporation under the commercial guarantee and the limited individual guarantee. The counterclaim and crossclaim were only to be pursued in the event that the Release and Settlement Agreement are set aside.

## II. LEGAL ANALYSIS

A. <u>Summary Judgment Standard</u>.

Rule 7056 of the Federal Rules of Bankruptcy Procedure adopts the standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only when no genuine issue of material fact remains to be decided so that the moving

party is entitled to judgment as a matter of law.  Historic Preservation Guild v. Burnley, 896 F.2d 985, 989 (6th Cir. 1989).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Once the moving party has met its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact on which the nonmoving party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322-24.  If after adequate discovery the party bearing the burden of proof fails to make a sufficient showing to establish an essential element of his claim, summary judgment is appropriate.  Id.

  B.  Count I.

The first Count of the Trustee's Complaint is based on 11 U.S.C. §548.  Trustee asserts that the release by QCI of BOSC from its obligations under the Master Service Agreement was a fraudulent transfer because QCI did not receive reasonably equivalent value in exchange for that release and that QCI was insolvent at the time of the transfer.  The Count also alleges that Strozdas, using Bank One and QCI, intended to hinder, delay or defraud the employees and other creditors of QCI from collecting on their claims against QCI.  The undisputed facts establish that the Defendants are entitled to judgment in their favor on Count I as a matter of law.

Section 548 contains the fraudulent transfer provision of the Code which allows the trustee to avoid transactions made within one year[1] of the commencement of the case that depletes the debtor's assets to the detriment of the bankruptcy estate. The statute encompasses transfers made with intent to hinder, delay or defraud creditors, as well as those that are deemed to be constructively fraudulent, because they are made for less than reasonably equivalent value, when the debtor is, or is rendered insolvent, undercapitalized or unable to pay its debts as they become due. In re Triple S Restaurants, Inc., 422 F.3d 405, 410 (6th Cir. 2005); 5 Lawrence P. King, *Collier on Bankruptcy* ¶548.01{1} (15th ed. revised).

In order to avoid a transfer pursuant to §548(a)(1), the trustee must prove (1) a transfer of an interest of the debtor's property or the incurring of an obligation; (2) made on or within one year of the petition date; and (3) with actual fraudulent intent. In re Osbourne, 124 B.R. 726, 728 (Bankr. W.D. Ky. 1989). The trustee must prove actual intent to defraud by a preponderance of the evidence. In re Jackson, 318 B.R. 5, 23 (Bank. D. N.H. 2004).

The trustee contends that the settlement between QCI and Bank One constituted actual fraud on the employees of QCI. In order to prove his actual fraud claim, Trustee relies on "badges of fraud." Because proof of actual intent to defraud is difficult to establish by direct evidence, it may be proven by circumstances surrounding the transfer. In re Triple S Restaurant, Inc., 422 F.3d at 416. The Trustee contends that QCI, through its agent Strozdas, was aware of the QCI employees' wage claim and that the settlement resulted in a personal benefit to Strozdas by elimination of his

---

[1] Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the limitation under §548 was one year. The Act extended the period to two years. The new law applies only to cases filed after April 21, 2006.

personal guarantee. According to the Trustee, the settlement further eliminated QCI's primary asset, the receivable from BOSC, resulting in no payment to the employees. This evidence, however, does not establish actual intent to defraud the QCI employees.

First, as will be discussed below, the QCI employees' wage claim did not trump Bank One's secured claim. Second, the circumstances surrounding the settlement do not support the Trustee's assertion. These facts are undisputed: Strozdas did not act unilaterally with respect to the settlement and release of the Bank One claims. Two other independent directors of QCI approved the settlement, including the release of Strozdas' personal guarantee. This decision was not made in a vacuum. Two law firms on behalf of QCI offered opinions supporting the conclusion as to the weakness of QCI's claim on its entitlement to the contingency fee under the Master Service Agreement. Finally, and most importantly, QCI received valuable consideration for releasing its disputed fee claim against BOSC – forgiveness of a debt worth nearly $1,450,000. There is not a scintilla of evidence in support of the actual fraud claim of the Trustee and the Defendants are entitled to judgment as a matter of law on this claim.

Trustee's second claim under §548 is based on constructive fraud. Trustee had to prove that (1) the debtor had an interest in the property transferred; (2) the transfer occurred within one year of the petition date; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of it; and (4) the debtor received less than reasonably equivalent value in exchange for the transfer. In re Jackson, 318 B.R. 5, 23 (Bankr. D. N.H. 2004). There is no real dispute as to the first three elements, however, the Trustee has put forth no evidence in support of the fourth element, entitling the Defendants to judgment as a matter of law on this claim also.

Whether value has been given for a transfer depends on all of the circumstances surrounding the transaction. "Thus, whether a release of rights under a contract or the surrender of a lease is made for value must depend upon whether a good bargain is being given up or a burdensome obligation is being discharged." 5 Lawrence P. King, *Collier on Bankruptcy* ¶548.05(1)(b) (15th ed. revised). Determining whether the debtor received reasonably equivalent value requires two somewhat separate inquiries: (1) was there a receipt of what may properly be considered "value" and if there was, (2) was that value "reasonably equivalent to what was transferred." In re Chomakos, 170 B.R. 585, 589 (Bankr. E.D. Mich. 1993), aff'd 69 F.3d 769 (6th Cir. 1995); see also, Matter of Long Development, Inc., 211 B.R. 874 (Bankr. W.D. Mich. 1995). The Long Development case is factually similar to the case at bar. There, the court granted summary judgment determining that a settlement agreement was supported by adequate consideration and did not constitute constructive fraud and was not intended to defraud creditors and therefore, did not constitute actual fraud. The settlement was achieved after an arms-length negotiation where the debtor assigned a portion of promissory notes worth $3.1 million and in exchange the debtor was released of liability on at least $5 million in claims. The fact that the debtor's president was released from personal liability as part of the settlement did not affect the legitimacy or value of the settlement with the debtor itself. Similarly, the release of Strozdas on his personal guarantee does not affect the legitimacy of the Release and Settlement Agreement that was clearly achieved in an arms-length transaction. In other words, the release of Strozdas' personal guarantee had no effect on the value of the settlement to QCI – the release of $1,450,000 in secured claims.

This Court is of the opinion that QCI received considerable value from the Release and Settlement Agreement whereby it was released of $1,450,000 in secured claims in exchange for a

-10-

release of a questionable, if not worthless, contingency fee claim. The evidence of record supports no other conclusion. There being no evidence to support a constructive fraud claim, the Defendants are entitled to summary judgment on this claim also.

    C.  Count II.

In Count II of the Complaint, the Trustee asserts that the release of the obligation of BOSC under the Master Service Agreement was a preferential transfer under 11 U.S.C. §547. Trustee alleges that Bank One was not first in priority because the QCI employees' wage claim was superior to all other creditors pursuant to KRS 376.150.

Section 547(b) of the Code enables the Trustee to set aside a transfer as preferential if the following elements exists: (1) a transfer; (2) of property of the debtor; (3) to or for the benefit of a creditor; (4) on account of an antecedent debt; (5) was made while the debtor was insolvent; (6) within one year of the date of filing of the petition of the bankruptcy; and (7) the transfer enabled the creditor to obtain more than he would have received under Chapter 7. The Trustee has the burden of proof on each element. 11 U.S.C. §547(g).

The Trustee contends that he has met each element establishing the preferential nature of the transfer. The Court disagrees with the Trustee's contentions for several reasons.

The undisputed facts of record establish that QCI was not entitled to a fee under the Master Service Agreement. As discussed above, the evidence of record does not support the conclusion that AT&T accepted the proposed solution, the only way upon which QCI could claim a fee. Taken to its logical conclusion, this means that under the Release and Settlement Agreement QCI did not actually transfer anything of value to Bank One. The fee claim, was at best, a contingency claim.

If a creditor receives no value from the transfer, a trustee has no basis for recovery under 11 U.S.C. §547. Matter of Isbell, 24 B.R. 234, 236 (Bankr. W.D. Mo. 1982).

Additional grounds exist for granting Defendants judgment as a matter of law on the Trustee's preference claim. The first is that Bank One was a secured creditor of QCI. The Trustee contends that Bank One's "priority secured claim" was inferior to the QCI employees' wage liens. The evidence of record does not support the Trustee's claim in this regard.

The employee lien statute provides very strict guidelines as to when an action to enforce the lien must occur. The statute states in pertinent part:

> . . . Action to enforce the lien shall be filed within sixty (60) days from the date of the assignment, or from the date when the property goes into the hands of a receiver or trustee, or from the date when the business is stopped, suspended or sold; or the claims for which a lien is asserted shall be filed in said time with the person authorized to receive and report claims.

KRS 376.190.

The Trustee stated in his Motion for Summary Judgment that the QCI Board of Directors voted to close the business and distribute its assets among its creditors on August 5, 2002. "Under KRS 376.180, the employees' lien attached at that moment." Docket No. 80, at p. 18. This is the date the business was stopped under the statute. The employees filed suit on October 30, 2002, more than sixty days from the date the business ceased.[2]

---

[2] The Board of Directors voted to retain a receiver on August 12, 2002. Even if the Trustee uses this date, the action was not commenced timely. The Court also notes that the Trustee refuted the August 5 date as the date work stopped at QCI by filing an affidavit with his Response asserting that work continued until September 10, 2002. This affidavit was from an undisclosed witness that the Defendants had no opportunity to depose. The Trustee's attempt to create a factual issue is unavailing and he is bound by his representations in his Motion for Summary Judgment regarding August 5 as the date QCI ceased business.

This Court also agrees with Bank One that under Kentucky law, a secured claim takes priority over a nonpossessory statutory lien claim. KRS 355.9-333; <u>ITT Commercial Fin. Corp. v. Madisonville Recapping Co., Inc.</u>, 793 S.W.2d 849, 852-53 (Ky. App. 1990). The wage lien claimed by the Trustee is a nonpossessory lien and cannot defeat Bank One's secured claim's priority. Accordingly, the Trustee's preference claim fails as a matter of law.

D. <u>Count III</u>.

The final Count of the Trustee's Complaint is against Strozdas for breach of fiduciary duty. The Trustee alleges that Strozdas used QCI's receivable from Bank One to gain an economic advantage for himself and that his actions constituted conversion and/or usurpation of a corporate opportunity. The undisputed evidence of record does not support the Trustee's claim and entitles Strozdas to summary judgment as a matter of law on the claim.

It is undisputed that Strozdas received the benefit of the release of his personal guarantee in the amount of $250,000 through the Release and Settlement Agreement. However, it is also undisputed that QCI received a tremendous benefit under the Release and Settlement Agreement in the form of the relief of $1.4 million in debt in exchange for a highly speculative recovery of a receivable from BOSC. The most telling facts, and those most fatal to the Trustee's claim of breach of fiduciary duty are that two independent directors, other than Strozdas, voted for approval of the settlement and that QCI's outside counsel recommended the settlement and affirmed the finding that BOSC did not owe QCI the receivable because AT&T had not accepted the solution.

As an officer and director of QCI, Strozdas owed a fiduciary duty to QCI. <u>See</u> KRS §271B.300. The Trustee contends that Strozdas breached his fiduciary duties by negotiating the settlement that resulted in the release of his personal guarantee while giving up QCI's lone asset,

-13-

the BOSC receivable. Strozdas' actions, however, were protected by Kentucky's Business Judgment Rule. The Rule has been stated as follows:

> The Business Judgment Rule is a presumption that in making a business decision, not involving self interest, the directors of a corporation acting on an informed basis in good faith and in the honest belief that the action taken was in the best interest of the company. Allied Ready Mix Co., Inc. v. Allen, 994 S.W.2d 4, 9 (Ky. 1998), quoting Spiegel v. Buntrock, 571 A.2d 767, 774 (Del. 1990).

The record demonstrates that more than a presumption exists showing that Strozdas acted on an informed basis in good faith and in the honest belief that the settlement and release were in the best interest of the company.

The only evidence Trustee relies upon to show that Strozdas' actions were in his own self interest was the release of his personal guarantee. The evidence of record, however, strongly rebuts this claim. Strozdas sought an opinion of his brother, Jerome Strozdas, a lawyer who clearly acknowledged the weakness of the claim for the receivable from BOSC. Next, QCI's own independent counsel recommended that QCI accept the Release and Settlement as being in the best interest of QCI. Finally, two independent directors of QCI approved the terms of the Release and Settlement – – an action that clearly validated the action under Kentucky corporate law. See KRS 271B.8-310. Under the circumstances, the Trustee's claim against Strozdas for breach of fiduciary duty fails as a matter of law.

## CONCLUSION

For all of the above reasons, the Motions for Summary Judgment of Defendant James Strozdas and Defendant J.P. Morgan Chase Bank, N.A., as successor by merger to Bank One, N.A. are **GRANTED** and the Motion for Summary Judgment of Plaintiff Trustee Randall Scherer is **DENIED**.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| QUALITY COMMUNICATIONS, INC. | ) | CASE NO.: 02-34929 |
| | ) | |
| DEBTOR(s) | ) | |
| | ) | |
| RANDALL SCHERER | ) | AP NO.: 04-3053 |
| | ) | |
| PLAINTIFF(s) | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| QUALITY COMMUNICATIONS, INC., et al. | ) | |
| | ) | |
| DEFENDANT(s) | ) | |

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motions for Summary Judgment of Defendants James Strozdas and J.P. Morgan Chase Bank, N.A., as successor by merger to Bank One, N.A. and Chase Equipment Leasing, Inc. as successor by merger to Bank One Leasing Corporation, be and hereby are, **GRANTED**. There are no genuine issues of material fact and the Defendants are entitled to Judgment in their favor on all claims of the Complaint of Plaintiff Randall Scherer, Trustee for the Estate of Quality Communications, Inc.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Motion for Summary Judgment of Plaintiff Randall Scherer, Trustee for the Estate of Quality Communications, Inc., be and hereby is, **DENIED**.